568

No. 29,769.

The Emerson-Brantingham Implement Company, *Appellant*,
v. J. A. Fenimore, *Appellee*.

(296 Pac. 697.)

Opinion filed March 7, 1931.

. *M. B. Munson,* of Pittsburg, and *C. E. Freeman,* of Topeka, for the appellant.

*Fred A. Walker,* of Columbus, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for judgment on nine promissory notes of $50 each and to foreclose a chattel mortgage on an engine and sawmill given to secure their payment. The answer admitted the execution of the notes and mortgage, but alleged they were given as a part consideration for an engine and sawmill purchased by defendant on a written order from plaintiff through its agent and partner, A. L. Puffenbarger, a copy of which was attached to the answer. The written order was for "One 20-hp. No. 7519 Reeves engine and Curtis sawmill to be delivered and saw for 6 days 5 miles north ½ west of Pittsburg; 50″ saw." The machinery was fully warranted. The answer alleged that Puffenbarger was the agent of plaintiff to negotiate the sale, and a partner with plaintiff in that he was part owner of the engine and sawmill, and further alleged that the plaintiff, through its agent, delivered the mill and undertook to have it operate, but was not successful in getting it to do so; that in fact the condition of the engine was such that it was dangerous to try to operate it; that plaintiff, through its agent, finally quit trying to operate it and pulled it out of the way so defendant could have another rig, which he hired, pull in and do the work;

that defendant rendered all friendly and necessary assistance while the sellers were endeavoring to get the machinery to work; that plaintiff never complied with the order or the warranties contained therein, and that defendant had no benefit in the sum paid or for money expended; that defendant had purchased lumber and other material to the amount of $81 for repairing the mill and had paid $200 on the purchase price, for which he asked judgment by way of cross petition.

In its reply plaintiff denied that Puffenbarger was its partner in the ownership of the machinery and denied that Puffenbarger executed on behalf of plaintiff the contract, a copy of which was attached to defendant's answer, but alleged that Puffenbarger did execute a contract on behalf of plaintiff with defendant for the purchase of the same engine, but another sawmill, which contract recited that the machinery sold was secondhand, and specifically provided that it was not warranted in any particular.

The court held the burden of proof to be on defendant, and he offered his evidence, at the close of which plaintiff demurred thereto. The demurrer was overruled. Plaintiff offered no evidence, and the cause was submitted to the jury on instructions by the court. The jury returned a verdict for defendant and for the recovery on his cross petition for the sum of $281, on which verdict judgment was rendered.

Plaintiff filed no motion for a new trial, but has appealed from the order of the court overruling the demurrer to the evidence and from the judgment.

There being no motion for a new trial, plaintiff has not argued that the court committed error in the trial with respect to the introduction of evidence or instructions. Neither is it argued that there is anything wrong with the judgment, if, in fact, the case should have gone to the jury under the evidence. The result is that the only alleged error pressed for our attention is the order of the court overruling the demurrer to the evidence. Briefly, the evidence was that defendant, who resides at Pittsburg and who is president and general manager of the Joplin & Pittsburg Railway Company, and who had a material business, in 1925 went into the business of getting out some railroad ties and mine ties. These were being cut from some timber a few miles north of Pittsburg. For that purpose he desired a sawmill and engine and entered into a contract with Mr. Puffenbarger for the 20-hp. Reeves engine and Curtis sawmill. The

only dealings he had with anyone with respect to the purchasing of that property was with Puffenbarger. The contract, when the terms were agreed upon, was reduced to writing by Puffenbarger and executed in duplicate. Defendant was given one copy and Puffenbarger took the other to send to the Kansas City office of the plaintiff. Two hundred dollars was paid on the purchase price by two checks, one for $150 made to plaintiff, and the other for $50 made to Puffenbarger. Defendant was anxious to have a mill that would operate and had the contract provide that the machinery should be delivered at the place where he desired it, and that it would saw for six days, and to have it fully warranted. At the time the written order was given the engine was at Pittsburg, but the saw was reported to be somewhere in Oklahoma. The engine was taken to the place where it was to be delivered and Puffenbarger went to Oklahoma and got a sawmill which was not a "Curtis," but was a "Granger" sawmill, which was badly out of repair. He took that to defendant's place; defendant objected to it, but since he was anxious to start work Puffenbarger said he would fix it up and use it until the Curtis mill ordered could be delivered, and that this would be done, and at Puffenbarger's request and promise of reimbursement defendant purchased lumber and material to the amount of $81, which was used in repairing the sawmill. The amount of lumber purchased for this purpose, as shown by the evidence, was $91, but since defendant had alleged the amount in his answer as $81, that is what the jury allowed for that item. The evidence was that when Puffenbarger and the men he had employed for the work undertook to steam the engine up the flues leaked, that it was badly out of repair, that it was dangerous to operate either the engine or the saw, and that although defendant rendered every friendly assistance Puffenbarger and his men could not get the outfit to work to exceed four hours, and finally gave it up and said he couldn't get it to operate. At defendant's request it was pulled out of the way, perhaps 100 yards, and defendant was compelled to and did hire a man who owned a rig to come in and saw his material; that defendant had received no benefit for the money he paid on the purchase price and for materials to repair the saw, and that the contract under which he purchased had never been complied with by the sellers.

In this court, apparently for the first time, appellant seems to make the point that defendant has filed a sham answer and cites

*In re Bartholomew, Petitioner,* 41 Kan. 273, 21 Pac. 275, and other authorities to the effect that "a sham answer is one good in form, but false in fact and not pleaded in good faith." There is nothing in this case to indicate that the answer was not pleaded in good faith. Defendant had purchased the machinery on a written contract, executed both by him and by Puffenbarger. He set that contract up in his answer, and relied upon it, as he had a perfect right to do. But appellant argues that the answer was false in fact because the supposed duplicate of it sent by Puffenbarger to plaintiff differed materially in its terms from that retained by the defendant. There is nothing false in fact, so far as the defendant is concerned, with respect to his answer, or with respect to the copy of the written order on which he set up the machinery as a part of his answer. The evidence tends to indicate that Puffenbarger was not candid, either with the defendant or with the plaintiff, in that these written orders, understood to be duplicates, both prepared by him and executed at the same time, were so materially different in their provisions. The evidence of defendant develops the facts about the agreement that was made and the circumstances under which the written orders were executed. Plaintiff offered no testimony with respect to those matters, but relied solely upon the face of the papers which it held. There is nothing in the answer to indicate that the answer was "false in fact" in so far as defendant was concerned.

Appellant complains of defendant pleading that it and Puffenbarger were partners in the ownership of this machinery, and argues that a corporation cannot be a member of a partnership. While it may be conceded, generally speaking, that may be said to be true, no reason suggests itself why a corporation and an individual might not jointly own specific property. But we do not regard this point as very material, and evidently appellant does not so regard it. Appellant contends that there is no evidence to show Puffenbarger was its agent. But this contention lacks merit. Its reply does not deny Puffenbarger was its agent for the purpose of selling this machinery. All it denies is that Puffenbarger ever executed, on behalf of plaintiff, the contract attached to defendant's answer. The evidence discloses that he did execute it. The plaintiff's reply alleges that Puffenbarger did execute, on its behalf, the contract for the sale of machinery, a copy of which it relies upon, and there is other evidence in the record making it clear that Puffenbarger was the agent of plaintiff for the sale of this machinery.

Considering the record before us, there is nothing to indicate that plaintiff's answer was a sham answer, as contended by appellant, and there was ample evidence to go to the jury in support of it. From this it follows that the judgment of the court below must be affirmed. It is so ordered.